PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEMETRIUS HILL, | ) |
|            Plaintiff, | ) CASE NO. 4:12CV00229 |
| | ) |
|     v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| C.O. RUBOWSKY, | ) |
| | ) **MEMORANDUM OF OPINION &** |
|            Defendant. | ) **ORDER** [Resolving ECF No. 12] |

Before the Court is the motion for summary judgment filed by Defendant "C.O. Rubosky."[1] ECF No. 12. The United States magistrate judge recommended that the motion should be granted. ECF No. 24. After the issuance of the recommendation, *pro se* Plaintiff Demetrius Hill filed an opposition brief. ECF No. 26. The Court then referred the matter back to the magistrate judge for the preparation of a supplemental report and recommendation. ECF No. 27. After considering Plaintiff's opposition, the magistrate judge again recommended that the Court grant Defendant's motion. ECF No. 29. Plaintiff timely filed objections,[2] to which Defendant responded. ECF Nos.

---

[1] Defendant informs the Court that although his name is spelled "Rubowsky" on the Court's docket, the correct spelling of his name is "Rubosky."

[2] Plaintiff listed the following objections:

"1. The R&R misconstrues the facts as embodied within the summary judgment response and complaint; 2. The R&R fails to view the facts in favor of Plaintiff; 3. The R&R misconstrues/fails to address the argument presented in Plaintiff's retaliation/estoppel argument to exhaustion in summary judgment response; 4. The R&R fails to address factual and documentary contradictions; 5. The R&R

(continued...)

(4:12CV00229)

30, 31. Plaintiff then filed a motion for an extension of time to file a reply.[3] ECF No. 33. For the reasons provided below, the Court adopts the recommendation of the magistrate judge, overrules Plaintiff's objections, and grants Defendant's motion for summary judgment.

## I. Factual and Procedural Background

Plaintiff was a federal United States Marshals detainee who was incarcerated at the Northeast Ohio Correctional Center ("NEOCC") at all relevant times. Plaintiff alleges in his complaint, *see* ECF No. 1, that during his incarceration, Defendant wrote two false incident reports that resulted in Plaintiff's confinement in the special housing unit ("SHU"). Plaintiff claims that Defendant issued the incident reports in retaliation after Plaintiff complained to prison employees about Defendant's refusals to let Plaintiff call his attorneys. Plaintiff seeks damages under *Bivens* for purported violations of his First Amendment right "to be free from retaliation for seeking redress."[4]

---

[2](...continued)
fails to address Plaintiffs affidavit at all. <u>inter alia.</u> 6. There are genuine issues of material fact that preclude summary judgment . . . ."

ECF No. 30 at 2. These objections are vague. In the body of Plaintiff's brief, however, he elaborates by presenting specific claims that, while not neatly itemized, actually form the substantive grounds for his disagreement with the magistrate judge's recommendation. The Court will construe the latter, substantive claims as Plaintiff's objections, which the Court will address in detail below.

[3] The Court hereby denies this motion. Plaintiff already filed objections, and the motion does not offer compelling reasons why the Court should entertain further briefing on the matter.

[4] The Court previously denied Plaintiff's claims for denial of access to the courts as well as his retaliation claim against "Chief Rodriguez." ECF No. 6. The sole claims pending before the Court are Plaintiff's First Amendment retaliation claims against Defendant.

2

(4:12CV00229)

Defendant moved for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies before commencing this lawsuit. ECF No. 12. The Court referred the matter to United States Magistrate Judge George J. Limbert in accordance with 28 U.S.C. § 636. ECF No. 13. When Plaintiff failed to file an opposition brief by the ordered date, the magistrate judge recommended that Defendant's motion should be granted. ECF No. 24. Thereafter, Plaintiff moved for an extension of time to respond to the motion for summary judgment, and requested that the Court vacate the magistrate judge's report. ECF No. 25. On the same day, Plaintiff filed an opposition brief. ECF No. 26. The Court granted Plaintiff's motion for extension of time, denied the motion to vacate, and referred the matter back to the magistrate judge for the preparation of a supplemental report and recommendation. ECF No. 27. The Court instructed the magistrate judge to consider Plaintiff's opposition, and, if necessary, a reply from Defendant. ECF No. 27. The magistrate judge again recommended that the Court should grant the motion for summary judgment. ECF No. 29. Furthermore, he determined that it was not necessary for Defendant to file a reply.

Plaintiff timely filed objections to the magistrate judge's recommendation. ECF No. 30. Defendant filed a response. ECF No. 31. The motion is ripe for adjudication.

## II. Legal Standard

"Summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (*quoting* Fed. R. Civ. P. 56(a)). "'A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the nonmoving party.'" *U.S. ex rel. Wall v. Circle C Construction, LLC*, 697 F.3d 345, 351 (6th Cir.

(4:12CV00229)

2012) (*quoting Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006)). A court deciding a motion for summary judgment "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Kuhn v. Washtenaw County*, 709 F.3d 612, 620 (6th Cir. 2013). "Where the moving party carries its initial burden, the nonmoving party 'may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Ellington v. City of East Cleveland,* 689 F.3d 549, 552 (6th Cir. 2012) (*quoting Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009)); *see Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) ("a mere 'scintilla' of evidence in support of the nonmoving party's position is insufficient to defeat summary judgment").

A federal district court may designate a magistrate judge to submit recommendations for the disposition of a motion for summary judgment. 28 U.S.C. § 636(b)(1)(B). When objections are filed, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636 (b)(1)(C). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636 (b)(1)(C).

### III. Discussion

The magistrate judge reviewed the evidence submitted by the parties and determined that Plaintiff failed to exhaust his administrative remedies before proceeding with this lawsuit. ECF No. 29 at 5. Because exhaustion is a threshold requirement that prisoners must satisfy in order to assert a federal claim regarding prison conditions, the magistrate judge concluded that Plaintiff's claims should be dismissed. ECF No. 29 at 11. Plaintiff does not dispute that he failed to exhaust

4

(4:12CV00229)

administrative remedies. Plaintiff contends in his objections, however, that his failure should be excused. In particular, Plaintiff asserts that: (1) he lacked access to NEOCC's grievance policy setting forth the means by which prisoners may seek redress for their complaints; (2) Defendant's retaliatory acts made NEOCC's grievance process unavailable or otherwise waived the exhaustion requirement; (3) Plaintiff was told by NEOCC employees that he could not file a grievance concerning "disciplinary actions"; and (4) NEOCC's own grievance policy provides that disciplinary actions, which include incident reports, cannot be grieved. ECF No. 30 at 3-4, 6, and 7-8.

**A. Prison Litigation Reform Act ("PLRA")**

Plaintiff's action is rooted in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), the case in which the Supreme Court recognized a private action for damages against federal officers alleged to have violated a citizen's constitutional rights. *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001). Because Plaintiff was at all relevant times a prisoner, his *Bivens* claims are subject to the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq*. The relevant section of the PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Congress enacted the PLRA in the wake of a sharp rise in prisoner litigation in the federal courts for the purpose of alleviating the burden of this litigation. *Napier v. Laurel County, Kentucky*, 636 F.3d 218, 222 (6th Cir. 2011). The Supreme Court has identified several important goals that the PLRA was designed to achieve, including: (1) providing prisoners with an effective incentive

5

(4:12CV00229)

to use the prison grievance process while affording prisons a fair opportunity to address complaints and correct their own errors; (2) reducing the quantity of prisoner suits by either successfully redressing prisoner complaints internally or persuading some prisoners to not file an action in federal court; and (3) improving the quality of prisoner suits that are eventually brought via the creation of an administrative record. *Woodford v. Ngo*, 548 U.S. 81, 93-95, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). "The PLRA's exhaustion requirement is a strict one." *Napier*, at 226. It demands "proper exhaustion," meaning "compliance with [a] [prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, at 90-91.

Notwithstanding the PLRA's strict exhaustion requirement, the language of the act explicitly provides that the requirement pertains to "such administrative remedies *are as available* . . . ." 42 U.S.C. § 1997e(a) (emphasis added). The PLRA does not define "available." Courts have defined the term by its plain meaning, which is "'capable of use for the accomplishment of a purpose: immediately utilizable . . . accessible.'" *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2004) (*quoting* Webster's Third New International Dictionary (1986)); *see Small v. Camden County*, 728 F.3d 265, 271 (3d Cir. 2013). The Sixth Circuit and its sister circuits have recognized that a prison or prison official can engage in conduct that effectively renders administrative remedies unavailable to a prisoner. *See, e.g., Napier*, 636 F.3d at 224 (acknowledging that prison may render administrative remedies unavailable); *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) ("[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable'"); *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002) ("inmates

6

(4:12CV00229)

cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies").

Federal courts of appeal have adopted different approaches to ascertaining whether administrative remedies have been made unavailable to a prisoner. According to the Second Circuit, "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004). The Seventh Circuit follows this test. *Kaba v. Stepp*, 458 F.3d 678, 686 (2006) ("[t]he attack itself may have transformed the remedies from available to unavailable, for an ordinary prisoner in Kaba's shoes"). The Ninth Circuit also adheres to an objective standard, although it articulates its approach somewhat differently. *Albino v. Baca*, 697 F.3d 1023, 1035 (9th Cir. 2012) ("[a]n objective standard is consistent with how we have articulated the test regarding whether administrative remedies are unavailable in terms of whether '[r]ational inmates can[] be expected to use [the] grievance procedures'"), *en banc rehearing granted*, 709 F.3d 994 (2013).

When a prisoner alleges that remedies were unavailable due to threats or intimidation from prison officials, the Tenth and Eleventh Circuits vary from the preceding circuits and impose an additional requirement that the prisoner was *actually deterred* from pursuing remedies:

> We conclude that a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy 'unavailable,' and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness

7

(4:12CV00229)

>and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

*Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008); *see Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) (adopting Eleventh Circuit's analysis in *Turner*).

The Sixth Circuit has not articulated a method for assessing the availability of prison remedies or augured whether it will follow another circuit's approach. At most, it has announced that "[t]he Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Napier*, 636 F.3d at 224 (quotations omitted); *see Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) ("[t]his court requires an inmate to make 'affirmative efforts to comply with the administrative procedures,' and analyzes whether those 'efforts to exhaust were sufficient under the circumstances'").

The claim that a prisoner failed to exhaust administrative remedies is an affirmative defense under the PLRA. *Jones v. Bock*, 549 U.S. 199, 216, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). Therefore, the burden of establishing nonexhaustion falls on the defendant. *Albino*, 697 F.3d at 1031. "Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable." *Id.*; *see Tuckel*, 660 F.3d at 1254.

**B. NEOCC's Administrative Remedies**

The magistrate judge accurately summarized the internal grievance policy in place at NEOCC for prisoners to seek administrative redress for complaints. Plaintiff did not dispute any portion of the magistrate judge's factual summary, which follows below:

>In order for a U.S. Marshal detainee to exhaust his administrative remedies at NEOCC, he must follow the facility grievance procedures and carry the grievance

8

(4:12CV00229)

through to its finish. ECF Dkt. #12-1 at ¶ 10. According to the CCA grievance procedure, which is given to each inmate upon arrival at NEOCC, detainees must first file an informal grievance, followed by a formal grievance, and finally, if applicable, participate in the appeal process. *Id.* at ¶ 12-26.

The 14-5A Informal Resolution form must be utilized to initiate the informal grievance process. ECF Dkt. 12-1 at ¶ 12. Those 14-5A forms that are not related to medical treatment must be submitted through facility mail, or in person, to any member of unit management. *Id.* Detainees must submit their 14-5A forms within seven calendar days of the date the problem or incident became known to the detainee. *Id.* at ¶ 14. If the detainee is not satisfied with the response, the detainee will have five calendar days to submit a formal grievance to the Grievance Office. *Id.* at ¶ 16.

The 14-5B Detainee Grievance form must be utilized to file a formal grievance. ECF Dkt. #12-1 at ¶ 17. The 14-5B form can be delivered through facility mail, addressed to the grievance officer, or given to any unit staff member to forward or hand-deliver to the grievance officer. *Id.* Formal grievances will be responded to within fifteen calendar days of submission. *Id.* at ¶ 22. Formal grievances are responded to by including a written explanation for approval or disapproval. *Id.* at ¶ 21. The detainee will receive a copy of the response and any corresponding documents, and is required to provide his signature. *Id.*

If a detainee is not satisfied with the decision regarding a formal grievance, the detainee may complete the appeal section of the 14-5B form and resubmit the grievance. ECF Dkt. #12-1 at ¶ 24. Detainees have the ability to appeal all adverse decisions. *Id.* There is a five calendar day window after the response date listed on the 14-5B form for the detainee to file an appeal. *Id.* All appeals are forwarded to the Warden/Administrator for review and a final response. *Id.* at ¶ 25. The Warden/Administrator's response is final unless otherwise specified in the facility management contract. *Id.* at ¶ 26. The response to the appeal will be given to the detainee, along with any corresponding attachments, for signature. *Id.* at ¶ 25.

There is also an emergency grievance option available for detainees if the regular time guidelines would subject the detainee to risk of personal injury. ECF Dkt. 12-1 at ¶ 27. When the grievance is of an emergency nature, the detainee may circumvent the information resolution process. *Id.* at ¶ 28. The 14-5B form must be used to file an emergency grievance. *Id.* at ¶ 29. The envelope must be marked "Emergency Grievance," and the detainee may choose to deliver it in any of the means available for a typical 14-5B Detainee Grievance form. *Id.* The Grievance Officer determines if the grievance is of an emergency nature. *Id.* at ¶ 30. The detainee will receive a

9

(4:12CV00229)

> response for signature within one calendar day. *Id.* at ¶ 31-32. Emergency grievance responses may also be appealed if the detainee is not satisfied with the response. *Id.* at ¶ 24. The appeals process is the same for formal grievances and emergency grievances. *Id.*
>
> If a detainee fails to follow the above procedures, or omits any part of them, then he has not exhausted the administrative remedies available to him. ECF Dkt. #12-1 at ¶ 33.

ECF No. 24 at 6-8.

**C. Plaintiff's Grievance History**

In determining that Plaintiff failed to exhaust his administrative remedies, the magistrate judge set forth Plaintiff's grievance history at NEOCC as follows:

> According to Sean Daugherty, the Executive Assistant and the Facility Grievance Officer at the NEOCC, he received a 14-5B form marked "Emergency Grievance" on December 1[4],[5] 2011, from Plaintiff. *Id.* at ¶ 37. In the form, Plaintiff accused Defendant Rubosky of violating his privacy rights by making slanderous comments to Plaintiff's attorney in an attempt to disrupt the attorney-client relationship. *Id.* at 25. Mr. Daugherty attests that on December 14, 2011, this emergency grievance was rejected because the grievance was not one of such nature 'in which the potential for personal injury or irreparable harm exists.' *Id.* at 27. Plaintiff signed the rejection notice. *Id.* at 28. The rejection notice detailed how to file a grievance through the proper channels. *Id.* at 27. Plaintiff never filed the appropriate 14-5A Informal Grievance form, nor appealed the rejection of his improperly submitted emergency grievance. *Id.* at ¶ 40-41.
>
> Mr. Daugherty further attests that he also received Plaintiff's 14-5B Formal Grievance form on December 1[4],[6] 2011. ECF Dkt. #12-1 at 30. The 14-5B form accused Defendant Rubosky of retaliation against Plaintiff for filing grievances and

---

[5] The magistrate judge erroneously stated that Daugherty received the emergency grievance on December 13, 2011. Daugherty received it on December 14, 2011. ECF Nos. 12-1 at 7, 25.

[6] The magistrate judge erroneously stated that Daugherty received this grievance on December 13, 2011. Daugherty received it on December 14, 2011. ECF Nos. 12-1 at 8, 30.

(4:12CV00229)

>complaints by obstructing Plaintiff from making legal phone calls. *Id.* On December 14, 2011, this formal grievance was rejected because Plaintiff failed to utilize the informal resolution process before filing a formal grievance. *Id.* at 32. Plaintiff signed the rejection notice. *Id.* at 33. Again, the rejection notice indicated the proper channels through which to file a grievance. *Id.* at 32. Plaintiff never filed the appropriate 14-5A Informal Grievance form, nor appealed the rejection of his improperly submitted 14-5B Formal Grievance form. *Id.* at ¶ 47-48.

ECF No. 24 at 8.

### D. Plaintiff Objections

*1. Objection One*

Plaintiff's first contests the magistrate judge's finding that NEOCC's grievance policy was made available to prisoners through the law library or through the unit counselor. Plaintiff claims that "[t]he Policy unearthed by defendants is not in the law library" and "Plaintiff does not have access to the counselors office." ECF No. 30 at 10.

Daugherty attested in his affidavit that "detainees have access to the complete grievance policy and other grievance materials through their unit counselor as well as access to the policy in the NEOCC law library." ECF No. 12-1 at 3. The affidavit provided by Plaintiff challenges Daugherty's affidavit, in part, by stating that the policy was "never in either the SHU or general population law library." ECF No 26-1.

The Court notes that Plaintiff does not provide evidence showing that the grievance policy was not available through his unit counselor. Plaintiff's unsubstantiated claim that he lacked access to the counselor's office is belied by his own admission that he spoke with his counselor about the grievance process. ECF No. 30 at 10. In any event, it is undisputed that upon Plaintiff's arrival at NEOCC, he was given a copy of the "Inmate Admission and Orientation Handbook" ("inmate

11

(4:12CV00229)

handbook"), which summarizes the grievance policy. ECF Nos. 12-1 at 3; 26-3. Plaintiff submitted the inmate handbook as an exhibit to his opposition brief. The inmate handbook outlines NEOCC's three-tiered grievance process, specifies all time requirements, and provides that an emergency grievance may be filed if "compliance with regular time frames would subject" the prisoner to personal injury. ECF No. 26-3 at 31-32. The inmate handbook also broadly sets forth that "[a]ll matters dealing with care and supervision . . . need to be addressed through the . . . grievance procedures." ECF No. 26-3 at 31.

Plaintiff's possession of the inmate handbook defeats his claim that he was denied access to NEOCC's grievance policy. Therefore, Plaintiff's objection is overruled.

    *2. Objection Two*

In his next objection, Plaintiff claims that Defendant's retaliatory acts made NEOCC's grievance process unavailable or otherwise waived the requirement that Plaintiff had to exhaust his administrative remedies. ECF No. 30 at 3-6.

According to the complaint, the two incident reports at issue were issued by Defendant on July 20, 2011, and December 6, 2011. ECF No. 1. The July 20 incident report accused Plaintiff of being "in an unauthorized area." ECF No. 1 at 3. The December 6 incident report accused Plaintiff of "engaging in a sex act with himself." ECF No. 1 at 4. Plaintiff attests in his affidavit that the incident reports were issued by Defendant "[i]n direct retaliation" after Plaintiff "complained to [Plaintiff's] unit manager and case manager about [Defendant] denying, obstructing and preventing [him] from making legal calls to [his] attorney." ECF No. 26-1.

(4:12CV00229)

Plaintiff did not use NEOCC's internal grievance procedures to complain about the July 20 incident report. ECF Nos. 12-1 at 9; 26-1. Plaintiff used the grievance procedures after the December 6 incident report but did not properly pursue the process to its conclusion. Plaintiff filed an emergency grievance on December 14, 2011, alleging that Defendant made slanderous comments to Plaintiff's attorney about the "sex act." ECF No. 12-1 at 25. After it was rejected for failing to constitute an emergency, Plaintiff neither appealed the rejection nor initiated an informal grievance by completing the 14-5A Informal Resolution form. Plaintiff also filed a formal grievance on December 14, 2011, alleging that Defendant "has retaliated against me, for filing grievances and complaints about his dereliction of duty w/ regard to providing legal calls." ECF No. 12-1 at 30. The grievance was rejected because Plaintiff did not first attempt to pursue an informal grievance. ECF No. 12-1 at 32. Plaintiff did not pursue an appeal of that decision, either. ECF No. 12-1 at 9.

As discussed, the Sixth Circuit requires a court to analyze whether an inmate's effort to exhaust were "sufficient under the circumstances" before evaluating whether the facility rendered those remedies unavailable. *Napier*, 636 F.3d at 223-24. Plaintiff's efforts to exhaust his administrative remedies were insufficient. He made no efforts to grieve the first incident report, and he did not properly follow the grievance process with respect to the second incident report.[7]

---

[7] Plaintiff contends that he did pursue an informal grievance before filing his formal grievance, and, as proof, attaches a 14-5A Informal Resolution Form, dated December 8, 2011, which indicates that his informal grievance was denied by "Counselor Minehart." ECF No. 30-1. The "FOR STAFF USE ONLY" section of the Form is filled out and purportedly bears the signature of Counselor Minehart. In response, Defendant submits an affidavit from Counselor Minehart stating that Plaintiff's proffer is a fake, that the handwriting on that Form does not belong to Counselor Minehart, and that Counselor Minehart did not fill out or sign that Form.
(continued...)

(4:12CV00229)

Moreover, no evidence shows, under either an objective or subjective standard, that the grievance process was rendered unavailable by retaliation. Plaintiff presents no evidence that a prisoner of "ordinary firmness" would have deemed the grievance process unavailable. Indeed, Plaintiff *actually availed himself of the process* by filing two grievances after the December 6 incident report; he simply failed to properly complete the processes. Plaintiff's affidavit does not indicate that he was thwarted from filing a grievance by Defendant's acts. Moreover, although Plaintiff's affidavit states that Defendant retaliated against him for complaining to prison employees about Defendant's conduct, Plaintiff does not attest that Defendant retaliated, or threatened to retaliate, against him for *using the grievance process*. See *Turner*, 541 F.3d at 1085 (administrative remedy may be unavailable when a prison official threatens retaliation for prisoner's pursuit of grievance). While Plaintiff's formal grievance claims that Defendant retaliated against him for "filing grievances," there is no evidence that Plaintiff filed any grievances prior to the July 20 and December 6 incident reports. Daugherty attests that the only grievances filed by Plaintiff were the two grievances received by him on December 14, 2011, *after* Defendant issued the second incident report.

Finally, the Court is not persuaded that Defendant waived the exhaustion defense via his alleged conduct. The Second Circuit has held that a prison's "own actions inhibiting the inmate's

---

[7](...continued)
ECF No. 31-2. The Court agrees that the Form is suspicious. Plaintiff did not file it with his opposition brief. Instead, he filed it with his objections *after* the magistrate judge issued his supplemental recommendation concluding that Plaintiff failed to exhaust his administrative remedies. Even if the Form is authentic, however, and shows that Plaintiff properly pursued an informal grievance, Plaintiff still did not appeal the rejection of the formal grievance, as required.

(4:12CV00229)

exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." Hemphill, 380 F.3d at 686.  Not all circuits have joined the Second Circuit's holding.  *See, e.g.*, Kaba, 458 F.3d at 687 ("we have explicitly avoided deciding whether equitable estoppel applies in this context"); Tuckel, 660 F.3d at 1253 n.3 ("[c]onfronted with [the issue of estoppel] once more, we again conclude it is unnecessary to decide the issue"); Goebert v. Lee County, 510 F.3d 1312, 1325 (11th Cir. 2007) (declining to decide "what, if any, exceptions to the exhaustion requirement exist"); *but see* Wright v. Hollingsworth, 260 F.3d 357, 358 n.2 (5th Cir. 2001) (exhaustion requirement "may be subject to certain defenses such as waiver, estoppel or equitable tolling").  Like other circuits, the Sixth Circuit has not decided the issue.

Even if the doctrine of equitable estoppel were available to Plaintiff, it would not excuse his failure to properly take advantage of NEOCC's grievance procedures.  As discussed, Plaintiff has provided no evidence that Defendant's conduct inhibited his exhaustion of remedies.  Contrarily, the evidence shows that Plaintiff utilized, without problems, NEOCC's grievance procedures.

Therefore, Plaintiff's objection is overruled.

### 3. Objection Three

Plaintiff's objects that he was informed by prison employees that he could not file a grievance regarding the incident reports because they related to disciplinary actions.  ECF No. 30 at 4.

In support of this objection, Plaintiff submits a 14-5A Informal Resolution Form, dated December 8, 2011, which Plaintiff claims he filed prior to the December 14, 2011, formal grievance. ECF No. 30-1.  The "FOR STAFF USE ONLY" section of the Form displays handwriting stating that Defendant's incident report is "nongrievable," and, beneath the handwriting is a signature

(4:12CV00229)

purportedly belonging to "Counselor Minehart." ECF No. 30-1. As discussed in footnote 5 of this decision, this Form is of dubious authenticity. Nevertheless, when viewing the Form in the light most favorable to Plaintiff, and assuming its authenticity, the Form is still not evidence that NEOCC made its remedies unavailable. Plaintiff possessed the inmate handbook, which summarized NEOCC's grievance policy, outlined the relevant requirements, and broadly provided that all matters "dealing with care and supervision . . . need to be addressed through the . . . grievance procedures." ECF No. 26-3 at 31. "[F]or an inmate to claim that a prisoner's grievance procedure was effectively unavailable due to the inmate's unawareness of the procedure, the inmate must show that the procedure *was not known and unknowable with reasonable effort*." *Albino*, 697 F.3d at 1037 (emphasis added); see *Dillon v. Rogers*, 596 F.3d 260, 269 (5th Cir. 2010) ("[w]hen a prisoner *has no means of verifying prison officials' claims about the administrative grievance process*, incorrect statements by officials may indeed make remedies unavailable" [emphasis added]); *Goebert*, 510 F.3d at 1323 ("[t]hat which is unknown and unknowable is unavailable"). Plaintiff cannot claim that the grievance procedures was unknowable. To the contrary, he knew them. Despite the alleged misrepresentations of prison employees, Plaintiff pursued a formal grievance against Defendant regarding the December 6, 2011 incident report. ECF No. 12-1 at 30.

To the extent that Plaintiff claims Defendant should be estopped from asserting the exhaustion defense because of the purported misrepresentations, his argument is again unavailing. Even if equitable estoppel were available to Plaintiff in this context, he would be required to show (1) a misrepresentation by the opposing party; (2) reasonable reliance on that misrepresentation; and (3) detriment. *Lewis v. Washington*, 300 F.3d 829, 834 (7th Cir. 2002); *Jernigan v. Stuchell*, 304

(4:12CV00229)

F.3d 1030, 1033 (10th Cir. 2002). Plaintiff cannot demonstrate any of the above elements. The claimed misrepresentations were not made by Defendant, and Plaintiff did not rely on the misrepresentations to his detriment.

Based on the above, Plaintiff's objection is overruled.

### 4. *Objection Four*

Finally, Plaintiff objects that NEOCC's own grievance policy provides that disciplinary actions are not grievable; therefore, Plaintiff's complaints about the two incidents reports issued by Defendant could not have been pursued through the grievance process. ECF No. 30 at 7.

NEOCC's grievance policy lists a number of matters that cannot be grieved, including: "5. Disciplinary actions (all disciplinary action must be addressed in accordance with disciplinary procedures in place at the facility) . . . ." ECF No. 12-1 at 14. It also lists a number of matters that can be grieved, including:: "3. Individual staff . . . actions" and "4. Reprisals against inmates/residents for utilizing the informal resolution or grievance processes . . . ." ECF No. 12-1 at 13. Therefore, although NEOCC has established a separate process for administering inmate discipline, retaliatory actions by corrections officers against inmates is clearly grievable. This is consistent with the requirement specified in the inmate handbook that all complaints relating to "care and supervision" must be addressed through the grievance process. ECF No. 26-3 at 31.

"An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan,* 304 F.3d at 1032. Therefore, Plaintiff's objection is overruled.

17

(4:12CV00229)

## IV. Conclusion

The Court therefore adopts the recommendation of the magistrate judge, overrules Plaintiff's objections, and grants Defendant's motion for summary judgment. This case is dismissed.

IT IS SO ORDERED.

 February 27, 2014   /s/ Benita Y. Pearson
Date  Benita Y. Pearson
  United States District Judge